# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA



Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 2:16cr 89 |
| v. | ) | |
| | ) | 18 U.S.C. § 1341 |
| PAULA LANE | ) | Mail Fraud |
| | ) | (Counts 1 – 11) |
| a/k/a "Paula Hipps," | ) | |
| | ) | 18 U.S.C. § 1343 |
| Defendant. | ) | Wire Fraud |
| | ) | (Counts 12 – 14) |
| | ) | |
| | ) | 18 U.S.C. § 1028A |
| | ) | Aggravated Identity Theft |
| | ) | (Counts 15 – 18) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C); |
| | ) | 28 U.S.C. § 2461 |
| | ) | Forfeiture |

## INDICTMENT

June 2016 Term – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

1. The unemployment insurance program is a federal-state partnership based on federal law and administered by state employees under state law. This program provides direct monetary payments to eligible unemployed workers to pay for basic needs, such as food, shelter, and clothing, while a search for work takes place.

2. Employers in Virginia are required to submit quarterly contribution reports that list, among other items, the individual employees who worked for the business and the amount of wages they were paid. Businesses are required to submit this report and remit unemployment

taxes to the Virginia Employment Commission (VEC), located in Richmond, Virginia, within approximately one month following the end of each quarter.

3. An unemployed worker may contact the VEC and submit a claim for unemployment insurance benefits. If the former employee meets certain requirements, including having received a sufficient amount of wages prior to separation, they become eligible to receive unemployment insurance benefits. These benefits come in the form of money paid by the VEC to the claimant.

4. The VEC relies on the truthfulness of the employer's quarterly contribution report to verify an employee's wages and dates of employment. Should an employee be terminated and submit a claim for unemployment benefits, these reports are then used to determine the claimant's eligibility for benefits. The former employee's wages is one factor in determining the amount of the benefit to which the former employee is entitled.

5. The unemployment benefits claims are typically initiated via the VEC's internet website or by telephone filing. When a claim is approved by the VEC, the VEC authorizes the payment of money to the claimant. The amount of the payment is determined by the VEC in accordance with state law. Claims must be made on a weekly basis to continue to receive benefits. Weekly claims can be made via telephone.

6. Once the VEC receives a claim, it mails to the claimant several pieces of follow-up documents. One document is a notice informing the claimant on how to claim benefits. This notice provides the claimant with a personal identification number (PIN) that the claimant must use to make claims and obtain information. Another document is called a "Monetary Determination." This document provides confirmation to the claimant that the claim has been

received and analyzed for eligibility. The Monetary Determination letter explains how much the claimant is authorized to receive and when the claimant's eligibility expires.

7. The claimant may elect to have the unemployment insurance benefits directly deposited into a bank account or have the money sent to a debit card account, called an EPPICard. The payments continue until the claimant stops filing, the claimant becomes ineligible due to employment, or the time period expires.

8. The internet is an interconnected network of computers with which one communicates when on-line, and that network crosses state and national borders.

<u>COUNTS ONE THROUGH ELEVEN</u>

From in or about August 2013 through in or about August 2014, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, defendant PAULA LANE did knowingly and unlawfully devise and intend to devise a scheme and artifice to defraud the VEC, and for obtaining money from the VEC by means of false or fraudulent pretenses, representations, or promises, which scheme and artifice, and the execution thereof, were in substance as follows:

1. The allegations contained in paragraphs 1 – 8 of the section entitled "Introductory Allegations" are hereby realleged and incorporated by reference, as if fully set forth herein.

2. The object of said scheme and artifice was to obtain money to which the Defendant and other scheme members were not entitled by making materially false and fraudulent representations to the VEC in order to obtain unemployment insurance funds.

3. It was part of the scheme and artifice that PAULA LANE would register corporations with the VEC under the names and social security numbers of other persons but with false or inaccurate addresses and contact information.

4. It was further a part of the scheme and artifice that LANE would file, or cause to be filed, false and fraudulent quarterly wage reports with the VEC listing as employees the names and social security numbers of actual persons (hereinafter "false employees"). The wage reports claimed that corporations employed and paid wages to the false employees. In fact, the corporations existed in name only, had no employees, and paid no wages.

5. LANE and other members of the scheme obtained these names, dates of birth, and social security numbers of actual persons through various methods and used these means of identification in furtherance of the scheme and artifice.

6. It was further a part of the scheme and artifice for LANE and other scheme members to file unemployment insurance claims under the names of the false employees claiming to have been laid off by the associated employer. LANE and other scheme members would file the claims via the internet on the VEC's website or via the VEC's Voice Response Telephone Filing System. The Defendant or scheme member would claim to have worked for the associated employer for a requisite period of time and to have received a sufficient amount of wages in order to ensure benefit eligibility.

7. In applying for unemployment insurance benefits under the false employee's identity, LANE and other scheme members would provide an address to which LANE had access.

8. It was part of the scheme and artifice for LANE to coordinate with others to use their home addresses as a place to receive correspondence from the VEC through the mail. LANE also used her own home address to receive correspondence through the mail.

9. Based on the information provided in the unemployment insurance claim made by LANE or another scheme member, the VEC would send a letter entitled "Monetary

Determination," which set forth the weekly payment amount to which the claimant was entitled. This letter was mailed to the address indicated in the application. The VEC would also mail a document containing the claimant's personal identification number (PIN).

10. During the initial filing of the unemployment claim, LANE or another scheme member would indicate a preference as to how to receive unemployment insurance payments from the VEC, such as payment via EPPICard or direct deposit into a specified bank account.

11. If an EPPICard was requested, the VEC authorized a card to be mailed to the address provided by LANE or scheme member. The EPPICard program was managed by Xerox Card Services in North Carolina, a private company under contract with the state of Virginia.

12. The bank accounts designated in the claims were accounts under the custody and control of LANE or a scheme member.

13. In order to continue receiving unemployment benefit payments, LANE or another scheme member would contact the VEC on a weekly basis, provide the personal identification number associated with the claim, and certify that she was unemployed but was searching for work.

14. If the claimant completed the certification and was eligible under the rules, the VEC would authorize the weekly payment by either electronically transferring money into the designated bank account or informing Xerox Card Services via electronic message to execute a wire transfer of money to the claimant's EPPICard account.

15. The fraudulently obtained unemployment insurance money would be used for the benefit of LANE or a scheme member.

16. As a result of the scheme and artifice, the defendant and members of the scheme claimed unemployment benefits to which they were not entitled in the approximate amount of $78,576.

17. On or about the dates set forth below, in the Eastern District of Virginia, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, PAULA M. LANE did knowingly cause to be delivered by mail, according to the direction thereon, unemployment insurance documents from the VEC to addresses provided by LANE, each mailing being a separate count of this indictment as indicated:

| Count | Date of mailing | Addressee | Mailing Address | Type of Document |
|---|---|---|---|---|
| 1 | 02/24/2014 | W.P. | 2400 White Marsh Road; Suffolk, VA | Monetary Determination |
| 2 | 04/21/2014 | D.J. | 44 Adam Swamp Road; Corapeake, NC | Monetary Determination |
| 3 | 10/07/2013 | E.W. | 150 Savage Road; Corapeake, NC | Monetary Determination |
| 4 | 10/07/2013 | C.W. | 150 Savage Road; Corapeake, NC | Monetary Determination |
| 5 | 10/07/2013 | J.M. | 1596 Middle Swamp Road #106; Corapeake, NC | Monetary Determination |
| 6 | 10/07/2013 | R.J. | 1596 Middle Swamp Road; Corapeake, NC | Monetary Determination |
| 7 | 02/24/2014 | S.W. | 2400 White Marsh Road; Suffolk, VA | Monetary Determination |
| 8 | 02/24/2014 | L.S. | P.O. Box 512; Suffolk, VA 23439 | Monetary Determination |
| 9 | 02/24/2014 | W.B. | 2400 White Marsh Road #115; Suffolk, VA | Monetary Determination |
| 10 | 03/25/2014 | L.N. | 2400 White Marsh Road #15B; Suffolk, VA | Monetary Determination |
| 11 | 08/01/2014 | KJB Landscaping | 2413 Rodgers St Chesapeake, VA | Notice of Delinquent Taxes |

(In violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNTS TWELVE THROUGH FOURTEEN

1. The Introductory Allegations and Paragraphs 1 – 16 of Counts One through Eleven of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth below, in the Eastern District of Virginia, for the purpose of executing the aforesaid scheme and artifice, PAULA M. LANE did cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, that is, computer transmissions from the VEC in Richmond, Virginia, to Xerox Card Services in North Carolina, authorizing payments to EPPICard accounts under the names of persons that were associated with false claims initiated by LANE, each wire transmission being a separate count of this indictment as indicated:

| Count | Date | False Employee Name | EPPICard Account Number (last 5 digits) | Payment Authorization Amount |
|---|---|---|---|---|
| 12 | 03/04/2014 | W.P. | -71703 | $341.00 |
| 13 | 07/10/2014 | D.J. | -42363 | $340.20 |
| 14 | 05/13/2014 | L.D. | -42353 | $370.00 |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIFTEEN

On or about October 7, 2013, in the Eastern District of Virginia, defendant PAULA LANE did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of mail fraud in violation of Title 18, United States Code, Sections 1341), as charged in Count Five of this Indictment), that is, the defendant unlawfully used the name and identity information of J.M. to file for and receive fraudulent unemployment insurance payments.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2.)

## COUNT SIXTEEN

On or about February 24, 2014, in the Eastern District of Virginia, defendant PAULA LANE did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of mail fraud in violation of Title 18, United States Code, Sections 1341), as charged in Count Seven of this Indictment); that is, the defendant unlawfully used the name and identity information of S.W. to file for and receive fraudulent unemployment insurance payments.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2.)

## COUNT SEVENTEEN

On or about August 27, 2013, in the Eastern District of Virginia, defendant PAULA LANE did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of mail fraud in violation of Title 18, United States Code,

Sections 1341), as charged in Count Eleven of this Indictment); that is, the defendant unlawfully used the name and identity information of S.B. to register the company KJB Landscaping with the VEC.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2.)

## COUNT EIGHTEEN

On or about March 3, 2014, in the Eastern District of Virginia, defendant PAULA LANE did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of wire fraud in violation of Title 18, United States Code, Sections 1343), as charged in Count Twelve of this Indictment), that is, the defendant used the name and identity information of W.P. to file for and receive unemployment insurance payments.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2.)

## FORFEITURE ALLEGATION

THE GRAND JURY FURTHER ALLEGES AND FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in Counts One through Thirteen of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

3. The property subject to forfeiture includes, but is not limited to, the following property:

   a. A monetary judgment in the amount of at least $78,576, representing the proceeds of the scheme alleged in this Indictment.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c)).

UNITED STATES v. PAULA LANE

Criminal No. 2:16cr89

A TRUE BILL:

**REDACTED COPY**

_____
Foreperson

DANA BOENTE
UNITED STATES ATTORNEY

By: _____
Randy Stoker
Assistant United States Attorney
Virginia State Bar No. 73455
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
757-441-6331 Office
757-441-6689 Fax
randy.stoker@usdoj.gov